O P I N I O N
Appellant Toccara Varner appeals from the December 28, 2000, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE
On January 5, 1998, two complaints were filed in the Summit County Common Pleas Court, Juvenile Division, alleging that appellant, who was 15 years old at the time was a delinquent child. The complaints specifically alleged that appellant, on or about January 2, 1998, had committed the offenses of grand theft auto, a felony of the fourth degree if committed by an adult and aggravated robbery, a felony of the first degree if committed by an adult. As memorialized in a January 29, 1998, Magistrate's Decision that was adopted by the trial court, appellant was adjudicated delinquent by reason of both offenses and was committed to the custody of the Department of Youth Services for a minimum of one year and a maximum period not to exceed appellant's attainment of the age of twenty-one.
After appellant was released on parole, she began residing with her mother in Stark County, Ohio.
Thereafter, on May 5, 2000, a complaint was filed in the Stark County Court of Common Pleas, Juvenile Division, alleging that appellant, on or about May 5, 2000, was in violation of her parole for committing the offense of "Disorderly Conduct with Persistence". At the time, appellant was sixteen years old. The complaint specifically alleged that appellant was absent from school on May 1, 2000, and left school early on May 3, 2000. Following a hearing held on May 19, 2000, appellant's parole was revoked and appellant was committed to the custody of the Department of Youth Services. Appellant was released from custody of the same in July of 2000.
Subsequently, on October 10, 2000, a complaint was filed in the Stark County Court of Common Pleas, Juvenile Division, alleging that appellant was delinquent by reason of having violated the terms of her parole. The complaint specifically alleged that appellant had violated a prior court order and the terms of her parole by failing to attend Lake High School for the entire school year to date, by failing to complete community service, and by failing to follow parental rules. A hearing on the matter was held on December 27, 2000, before a Magistrate. The following testimony was adduced at the December 27, 2000, hearing.
The first witness to testify at the December 27, 2000, hearing in this matter was Denise Cottonbrook, a parole officer with the Department of Youth Services. At the hearing, Denise Cottonbrook testified that she was appellant's parole officer and that she had explained the rules of parole to appellant on appellant's first visit with Cottonbrook after release from the institution. According to Denise Cottonbrook's testimony, appellant both signed and understood the rules of parole which, in part, required appellant to follow the instructions of her parole officer[1]. When asked whether appellant had violated any of the rules of parole, Cottonbrook responded, in part, that appellant had failed to complete ten hours of community service within thirty days of her release on parole on July 9, 2000. Cottonbrook testified that while appellant was ordered to complete ten hours of community control at the Red Cross, a representative from the Red Cross telephoned her and told her that appellant had failed to complete the same. In addition, appellant, as of December 27, 2000, had turned paperwork into Cottonbrook from the Red Cross indicating that she had completed only four hours of community service. Appellant, according to Cottonbrook, never indicated that she had completed any additional hours of community service.
Cottonbrook further testified that appellant had violated her parole by failing to attend school as she was ordered to do under the rules of parole. While appellant withdrew from school legally since she was working full time at Burger King, appellant `s employment only lasted a couple of days. Cottonbrook testified that after appellant quit her job, she violated her parole by failing to either return to school or to find another place of employment. When asked what instructions she had given to appellant regarding her community service, Cottonbrook testified that at the last court hearing, she told appellant that she had to attend school everyday, to get a job and to complete the ten hours of community service.
Lowana Pickett, appellant's mother, also testified at the hearing. Pickett testified that she had knowledge of appellant's parole rules and had signed the same. When asked whether appellant had violated the rules of parole, Pickett testified that appellant, after quitting her job, did not go to school from August of 2000 to October of 2000. When asked why she had not enrolled appellant in school after appellant quit her job, Pickett testified that she was out of town on business with her husband. With respect to appellant's community service, Pickett testified that there was a bus route between the house in Akron which appellant was residing[2] and the Red Cross and that she had given appellant money for transportation to her such service.
Appellant, at the hearing in this matter, testified that no one had told her where she had to perform her community service and that, on her own, she went to the Red Cross where she performed seven hours of such service. When asked why she had not completed the full ten hours of community service ordered, appellant responded as follows:
 Because they [the Red Cross] . . . sometimes they don't have openings for me to come in like every day. Like I can't just come in . . . like walk in like every single day to do community service. They have to have an opening and sometime they don't even have work for people to do.
 Q. So how often did you contact the Red Cross to do the community service?
 A. Um . . . everyday that I could and like someday I would reschedule because I wouldn't be able to make it that day and some days like I'll call and they'll say they don't have anything for me to do and to call back next week of sometime.
 Q. So when you were first ordered to do your community service you went ahead and contacted the Red Cross and you on a continual basis up until this date tried to keep calling them to complete it is that correct?
A. Yes.
Transcript of December 27, 2000, hearing at 56. Appellant further testified that she knew that she had to perform her community service as soon as she got out of the institution and that she believed that she had until the end of her parole period to complete her community service. When questioned, appellant agreed that from July of 2000 until October 25, 2000, she performed no community service. The following is an excerpt from appellant's testimony regarding her failure to complete her community service requirement:
 Q. If I may interrupt . . . from July till when your mother kicked you out why didn't you . . . what stopped you from completing community service between those times?
 A. Because I didn't know any ah residence where I could do my community service at and the church across the street I couldn't do my community service there cause you had to be eighteen.
 Q. Did you ask um your parole officer where you can do community service?
 A. She . . . yes I did and she told me ah to go across the street or next door to the church or theater.
Q. Did you go next door?
A. Yes.
Q. What did they say?
 A. You have to be eighteen and um they sometimes don't be there.
Q. Did you try anywhere else?
 A. There . . . there was no where else close by my house.
 Q. Did you ask Ms. Cottonbrook for any where else to go?
A. Um . . . I don't think that I did.
 Q. Did you every complete. Did you ever do community service before?
 A. Oh I did ask Ms. Cottonbrook. I told Ms. Cottonbrook . . . I didn't ask her I told her that there was nowhere by my house where I could do community service and she never suggested anything.
Q. Have you had to complete community service before?
A. Yes I did.
Q. Where was that?
A. That was at the Red Cross.
Q. So you knew that you could go there?
 A. Right but ah when I went to the Red Cross this time um I needed some paperwork stating that I was on parole and that I needed um to do ten hours . . . to complete ten hours of community service. Like it was the first time I went in it was like a problem. They needed to talk to my PO before they would let me continue to do my community service and that was in October.
Q. And that was in October?
Transcript of December 27, 2000, hearing at 64-65.
Appellant also testified that she quit her employment with Burger King because she didn't have a babysitter for her one year old son. According to appellant, "I couldn't go to school and I couldn't go to work because my mother was out of town. She wasn't there for me to enroll me in school." Transcript of December 27, 2000, hearing at 68. While appellant admitted that she did not attend school in either September or October of 2000, she testified that she began attending Life Skills, a school in Akron, in November of 2000 after enrolling herself in the same.
Pursuant to a Magistrate's Decision that was adopted by the trial court on December 28, 2000, appellant was adjudicated delinquent for failing to attend high school and for failing to complete ten hours of community service. The Magistrate, in her decision, specifically noted that appellant's "own testimony regarding her efforts and excuses is found absolutely to lack credibility." Appellant's paroled was revoked and appellant was remanded to custody of the Department of Youth Services.
It is from the trial court's December 28, 2000, order that appellant now prosecutes her appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT VIOLATED TOCCARA VARNER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, AND JUV. R. 29(E)(4) WHEN IT ADJUDICATED HER DELINQUENT OF A PAROLE VIOLATION ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HER BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT VIOLATED TOCCARA VARNER'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HER DELINQUENT OF A PAROLE VIOLATION, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
This case comes to us on the accelerated calender. App. R. 11.1, which governs accelerated calender cases, provides, in pertinent part:
 (E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11. 1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form.
This appeal shall be considered in accordance with the aforementioned rule.
 I, II
Appellant, in her two assignments of error, argues that the trial court's adjudication of delinquency was against the sufficiency and manifest weight of the evidence. As is stated above, appellant was adjudicated delinquent based on the trial court's finding that appellant had failed to attend high school and to complete her community service as required by the conditions of her parole.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Construing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that appellant violated her parole by failing to complete her community service and to attend high school. We find that there was sufficient, competent and credible evidence presented that appellant failed to attend school or to complete her community service. As is set forth in the facts above, appellant, by her own admission, did not attend high school during the months of September and October of 2000 even though she was not employed during such time. While appellant blames her failure to enroll in and attend school on her mother, appellant herself testified at the December 27, 2000, hearing that she was able to enroll herself in school and began attending the same in November of 2000. Thus, as evidenced both by appellant's own testimony and that of Denise Cottonbrook, her Parole Officer, there was competent and credible evidence that appellant violated her parole by not attending school for two months.
Furthermore, with respect to community service, appellant herself testified that she knew when she left the Department of Youth Services institution that she was to complete ten hours of community service. Both appellant and Denise Cottonbrook, her parole officer, testified that appellant had failed to complete her community service as of the date of the hearing. While appellant disputes that she was told that she had to complete her community service within thirty days of her July 9, 2000, release on parole, Denise Cottonbrook's testimony to the contrary was both competent and credible.
We further find that the trial court's adjudication of delinquency was not against the manifest weight of the evidence. While appellant attempts to make excuses for her failure to complete her community service and her failure to attend school, the Magistrate, as trier of fact, clearly was in the best position to assess appellant's credibility. Clearly, as evidenced both by her statements on the record[3] and in her decision, the Magistrate found appellant to be completely lacking in credibility. In short, we cannot say that the trier of fact clearly lost its way so as to create a manifest miscarriage of justice.
Appellant's two assignments of error are, therefore, overruled.
Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 _____________________ Edwards, P. J.
By Gwin, J. and Farmer, J. concurs.
[1] The Parole Rules provided, in part, as follows:
Parole Rules
I will obey all federal, state, and local laws.
 Before leaving Ohio, even for a visit, I must get written permission from my Parole Officer.
I will follow the instructions of my Parole Officer.
 I will follow through with what I have agreed to do in my case plan.
 I will not purchase, possess, or have under my control, any weapon such as firearms, knives, etc.
 I will follow the rules of my parents/guardians, or placement facility, and remain in my placement residence until my Parole Office tells me otherwise.
 I will keep a 8:00 p.m. curfew and will be at my residence between 8:00 p.m. and 7:00 a.m. on weekdays.
 On Friday and Saturday, I will be at my residence between 8:00 p.m. and 7:00 a.m.
[2] Pickett testified that appellant stopped residing with her in September or October of 2000 and moved in with Pickett's daughter in Akron. Pickett, however, did not transfer legal guardianship of appellant to anyone at such time.
[3] The Magistrate, in adjudicating appellant delinquent, made the following comments on the record to appellant: "I have to share with you that the more you began to spin your stories and your excuses and contradict yourself I couldn't even keep up. You sunk yourself. . . . ." Transcript of December 27, 2000, hearing at 87.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.